Donald LaBINE, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 581S123.

Supreme Court of Indiana.

April 22, 1983.

Susan K. Carpenter, Public Defender, Jay Rodia, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Donald LaBine, was convicted by a jury of arson, a Class A felony, Ind.Code § 35–43–1–1 (Burns 1979 Repl.) and voluntary manslaughter, a Class B felony. Ind.Code § 35–42–1–3 (Burns 1979 Repl.). He was sentenced to consecutive terms of fifty and twenty years respectively. In his direct appeal, he presents the following issues for our review:

1. Whether the trial court erred when it permitted the state to introduce both a tape-recorded statement and prior testimony of an alleged accomplice after he had invoked the Fifth Amendment and refused to testify; and

2. Whether the evidence was sufficient to support the jury's verdict.

The record reveals that on December 14, 1979, a 1970 Dodge Charger automobile was found burning alongside Tunnel Hill Road in Harrison County, Indiana. The charred remains of a human carcass were discovered in the back seat of the automobile. The subsequent police investigation culminated in charges of murder and arson against both defendant and his business partner, John Schultz. In a separate trial conducted prior to the trial of the instant cause, Schultz was convicted of involuntary manslaughter and arson; Schultz's convictions were affirmed by this Court at *Schultz v. State,* (1981) Ind., 422 N.E.2d 1176.

I.

During the state's presentation of its case-in-chief, John Schultz was called to testify against defendant. Initially, Schultz refused to affirm or swear that he would tell the truth on the witness stand. After several such refusals, the trial court ordered Schultz to take the oath and indicated he would be found in contempt of court if he refused. Schultz then agreed and was sworn as a witness. Subsequently, Schultz

repeatedly invoked his privilege against self-incrimination when the prosecutor's questions focused on the substance of the crime charged. After the court ordered Schultz to answer the questions, he either would refuse or reply that he could not remember. The prosecutor then began reading questions and answers from Schultz's prior testimony at his own trial to refresh Schultz's recollection. At that time, the trial court gave the following instruction:

> "Ladies and gentleman, the questions asked by the Prosecutor relating to questions and answers of this witness, of and by this witness in the previous trial may be considered by you as an attempt by the Prosecutor to refresh the witness' recollection, as an attempt by the Prosecutor to impeach the witness and may be considered by you as substantive evidence in this case if, and only if, there's an acknowledgement of acceptance of the witness to the question as stated and/or his answer as stated."

Later, the prosecutor played a tape for the jury of Schultz's unsworn statement to police officers. The transcript from Schultz's trial also was admitted into evidence. Both the taped statement and the prior testimony implicated defendant. Although defendant requested a limiting instruction at the time the evidence was admitted, the trial court did not instruct the jury that the tape and transcript could be used only for impeachment purposes until after the prosecutor had finished the direct examination of Schultz. The defendant argues that the failure to give the limiting instruction until after the evidence was admitted, combined with the court's first instruction about the possibility of using the prior testimony as substantive evidence, was prejudicial to defendant. Defendant contends that because Schultz was unavailable for cross-examination, the prior statements were hearsay and that his right to confrontation was violated.

■ Defendant is correct in his assertion that Schultz's loss of memory and assertion of his Fifth Amendment privilege made him unavailable for cross-examination. *California v. Green,* (1970) 399 U.S. 149, 168 n. 17, 90 S.Ct. 1930, 1940 n. 17, 26 L.Ed.2d 489, 502 n. 17; *King v. State,* (1979) Ind.App., 397 N.E.2d 1260, 1269. Presumably it was for this reason that the trial court gave the limiting instruction. If Schultz had been available for cross-examination, his prior testimony would have been admissible as substantive evidence. *Lewis v. State,* (1982) Ind., 440 N.E.2d 1125; *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482.

Defendant alleges that he was denied his right to confrontation because Schultz was unavailable for cross-examination at trial and defendant had no opportunity to cross-examine Schultz when the prior statements were given. Again, defendant is correct if the prior statements had been admitted as substantive evidence. *California v. Green, supra; Douglas v. Alabama,* (1965) 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. However, as the record shows, the court instructed the jury that the prior out-of-court statements only could be used to impeach the witness's credibility. Defendant argues that the court's first instruction that the questions and answers being read from Schultz's prior testimony could be used as substantive evidence was in error and allowed the jury to consider the tape and transcript as substantive evidence. We find no merit in this argument.

■ First, the court instructed the jury that the questions and answers being read by the prosecutor could be used as substantive evidence only if the witness acknowledged or accepted the question and/or answer as stated. This instruction was correct. If Schultz had affirmed the questions or answers, effective confrontation would be possible. *Douglas v. Alabama,* 380 U.S. at 420, 85 S.Ct. at 1077, 13 L.Ed.2d at 938. Once cross-examination is possible, the prior statement may be introduced as substantive evidence. *California v. Green, supra; Lewis v. State, supra; Patterson v. State, supra.*

Second, after the tape and transcript were admitted, and Schultz had not affirmed either, the court instructed the jury:

"Ladies and gentlemen, there have been, there's been a tape played for you, there has also, introduced into evidence and played for you, and there's also been a transcript of the testimony of John Schultz, in his own trial, and these exhibits may be considered by you for the purpose of impeaching the testimony given by John Schultz in this trial. I've instructed you the testimony of a witness may be discredited or impeached by showing that a previously made statements which are inconsistent with his present testimony, the earlier contradictive statements are admissible only to impeach the credibility of the witness and not to establish the truth of his statements. It is within your province to determine the credibility, if any, to be given to the testimony of a witness who's been impeached. You may proceed. And those two exhibits may be considered by you for the purposes of impeachment."

We must presume on appeal that the jury obeyed the trial court's instruction in reaching its verdict and considered the tape and transcript for impeachment only. *Webster v. State,* (1980) Ind., 413 N.E.2d 898; *Brown v. State,* (1964) 245 Ind. 604, 201 N.E.2d 281.

 For prior inconsistent statements to be used for impeachment purposes, they must meet the legal standards of trustworthiness. *Harris v. New York,* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1; *Barker v. State,* (1982) Ind., 440 N.E.2d 664; *Purcell v. State,* (1981) Ind.App., 418 N.E.2d 533. The prior trial testimony of Schultz meets the legal standard. It was testimony given under oath, in court, and transcribed verbatim. Whether the unsworn recorded statement to the police by Schultz was legally trustworthy we do not decide. The statement was merely cumulative as to the witness's credibility and, if error, was harmless error. The prior trial testimony was more than sufficient for the jury to judge Schultz's credibility. It was not error to admit the transcript because the judge gave appropriate limiting instructions. The prior statements were not used as substantive evidence. Therefore, they were not hearsay, and defendant's confrontation right was not violated.

## II.

The defendant also alleges that the evidence was insufficient to support the verdicts. The defendant was convicted of arson and of voluntary manslaughter as a lesser included offense of murder. We have previously held that if the evidence is sufficient for the jury to find the defendant guilty of murder, a verdict of voluntary manslaughter may be returned instead. *Begley v. State,* (1981) Ind., 416 N.E.2d 824; *Hardin v. State,* (1980) Ind., 404 N.E.2d 1354.

Ind.Code § 35–42–1–1 (Burns 1979 Repl.) provides:

"Murder

"Sec. 1. A person who:

"(1) knowingly or intentionally kills another human being; or

(2) kills another human being while committing or attempting to commit arson

. . .

"commits murder, a felony."

Arson is defined as follows:

"Sec. 1. (a) A person who, by means of fire or explosive, knowingly or intentionally damages:

"(1) a dwelling of another person without his consent;

(2) property of any person under circumstances that endanger human life; or

(3) property of another person if the pecuniary loss is at least twenty thousand dollars ($20,000);

"commits arson, a Class B felony. However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any other person." Ind. Code § 35–43–1–1 (Burns 1979 Repl.).

 Defendant argues there was insufficient evidence to support the charges of murder and arson because the evidence was wholly circumstantial. Defendant acknowledges that on appeal this Court will not reweigh the evidence or judge the credibility of the witnesses but will consider only that evidence most favorable to the state

and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Garland v. State,* (1983) Ind., 444 N.E.2d 1180; *Begley v. State, supra.* The triers of fact may make reasonable inferences based upon facts established by either direct or circumstantial evidence. In addition, a guilty verdict may be based entirely upon circumstantial evidence. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805, *Harris v. State,* (1981) Ind., 425 N.E.2d 112. In such a case, this Court has consistently held that there is a distinction between the law governing the trial courts and the appellate courts in Indiana when circumstantial evidence is involved. *Spears v. State,* (1980) Ind., 401 N.E.2d 331; *Ruetz v. State,* (1978) 268 Ind. 42, 373 N.E.2d 152. On appeal, this Court does not have to find that the circumstantial evidence is sufficient to overcome every reasonable hypothesis of innocence, but need only find that we may draw a reasonable inference from the evidence which supports the finding of the jury. *Rowan v. State, supra; Hall v. State,* (1980) Ind., 405 N.E.2d 530; *Parks v. State,* (1979) Ind., 270 Ind. 689, 389 N.E.2d 286. The jury's verdict should be upheld if there is substantial evidence of probative value to support the finding of each element of the charged offense.

Because the prior testimony and statement of Schultz were admitted for impeachment purposes only, we must not consider them when reviewing the sufficiency of the evidence. *Webster v. State, supra.* We will only review the substantive evidence which was before the jury. In the present case, the record shows that defendant and Schultz were business partners. In the fall of 1979, they made application for life insurance policies for themselves in the amount of $200,000 each, making each the beneficiary of the other's policy. The policies never became effective, however, because certain medical and financial reports were not furnished to the insurance company. At trial, testimony was presented that Schultz had been in financial difficulty and that he and the defendant had discussed

insurance schemes as a way of obtaining money. They had discussed finding a body and making it look like Schultz had died. Evidence established that on December 13, 1979, after defendant and Schultz had been drinking together, Schultz disappeared. During the early morning hours of December 14, 1979, a burned corpse was found in Schultz's burned car which was against some trees along a road. There was very little impact damage done to the front of the car or the trees. Several weeks later defendant inquired about instituting a claim for insurance benefits for Schultz's death on the $200,000 policy. Schultz was later arrested in Arizona.

Rebecca Schultz testified that defendant knew Schultz was alive and living in Arizona. She stated that defendant had given her two phone numbers in order for her to reach Schultz and then had her burn them. Also, in response to inquiries from Mrs. Schultz, defendant stated he would take care of covering up the crime, would "blow away" one of the participants if she became a problem, and that the corpse would not be identified because it "had been taken care of." Mrs. Schultz also testified that defendant stated the fire had burned so long because there were five tires and gasoline in the trunk of the car. Furthermore, when Mrs. Schultz told defendant she knew where the car was if he wanted to see it, defendant replied: "Had I forgotten he was there?"

Defendant argues that the only inference to be drawn from the evidence is that the defendant knew of the arson scheme, not that he committed the arson. He relies on the testimony of Ronald Crimm, his insurance agent, who testified that he assumed defendant knew Schultz's insurance policy was not in effect based on a conversation with defendant on or about December 13, 1979. Crimm testified that he had notified defendant sometime around December 13 that the company had not yet received chest x-rays for Schultz; therefore the insurance policy would not be effective until the x-rays were received. Crimm also told defendant that if the information was provid-

ed, the policy would be effective as of the date of application. Defendant argues that because he knew Schultz was not insured, he had no motive to participate in the arson and murder. Defendant ignores the fact, however, that his knowledge of the ineffective policy was merely an assumption on Crimm's part. The fact that defendant later attempted to make a claim on the policy for Schultz's death contradicts this assumption. It is also significant that Crimm was unsure of the date of his conversation with defendant. He testified that it was after December 11, probably around December 12 or 13. Furthermore, Rebecca Schultz testified that defendant had told her she would receive $30,000 although the only insurance policy she and Schultz had was for $4,000 which had a loan on it.

It was for the jury to weigh this conflicting evidence and assess the credibility of the witnesses. Evidence was presented that defendant had discussed committing arson to collect on an insurance policy and that he and Schultz had been drinking together the night of the crime. There was conflicting testimony as to whether defendant knew the insurance policy on Schultz was not in effect. Also, it was undisputed that defendant knew Schultz was alive and failed to notify police of the fact. In addition, there was testimony from which a reasonable inference could be drawn that defendant knew of and participated in the arson. Based on the record, there was sufficient evidence from which to draw a reasonable inference to support the jury's finding on arson.

The record also shows that a person was killed as a result of arson. Both a forensic pathologist and a toxicologist testified that the victim was alive at the time of the fire. Heat from the fire, caused by an accelerant, had killed the victim. There was substantial evidence of probative value to support a finding of murder; therefore, the jury could return a verdict of voluntary manslaughter as a lesser included offense. *Begley v. State, supra; Hardin v. State, supra.*

For all of the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.