Stanley INGRAM, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–8610–CR–936.

Supreme Court of Indiana.

Dec. 14, 1989.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Stanley Ingram, was convicted of murder, felony murder, and armed robbery. He received concurrent sentences of forty years on the merged counts of murder and felony murder and thirty years for the armed robbery. In his direct appeal, the defendant raises several issues which we restate for discussion as follows:

1. admissibility of confession;
2. admissibility of witness deposition;
3. limitation of cross-examination;
4. prior inconsistent statement of defendant;
5. exhibits shown to jury during deliberations;
6. erroneous instructions; and
7. refusal of tendered instructions.

*1. Admissibility of Confession*

The defendant claims that the trial court erred in admitting a videotaped confession because it was procured by threats, coercion, and the detectives "putting words in his mouth" while he was intoxicated.

To admit a confession into evidence, the State must prove to the trial court beyond a reasonable doubt that the defendant intelligently and knowingly waived his rights to not incriminate himself and to have an attorney present. *Collins v. State* (1987), Ind., 509 N.E.2d 827. On

review this Court does not reweigh the evidence, but rather determines whether there was substantial evidence of probative value to support the finding that the confession was voluntary. *Id.*

The murder of Arnold Pennington occurred early in the morning of November 26, 1985, in Indianapolis. The defendant turned himself in to the police just before midnight on the same day. The defendant was advised of his rights and then signed a written waiver of rights. He thereafter gave a videotaped confession in which he admitted beating and robbing the victim. The detective in charge of the investigation testified that at the time of the confession the defendant was quiet and cooperative and appeared normal and not intoxicated. The defendant did not invoke his rights to silence or counsel. The assisting detective denied yelling at or threatening the defendant to procure the confession. The confession was made after the detectives discussed the crime with the defendant. The uncontroverted facts show that from about 10:00 p.m. on November 25, 1985, until 3:00 a.m. on November 26, the defendant had consumed portions of nine pitchers of beer with his brother-in-law and a friend. The defendant then picked up his girlfriend and went to a restaurant. The two argued, and the defendant left and returned. After resuming the argument, he left the restaurant again and walked to Monument Circle where he encountered the victim. While a passenger in the victim's car, the defendant drank a couple of beers at approximately 5:00 a.m., just two hours before he killed the victim. The record does not reflect any further ingestion of intoxicants by the defendant prior to his confession twenty hours later.

Regarding the alleged threats and coercion, the detectives' testimony provides probative evidence that the defendant knowingly waived his rights. Evidence was also presented that the defendant was not intoxicated at the time he confessed. The trial court did not err in admitting the defendant's confession.

### 2. Admissibility of Witness Deposition

The defendant claims that the trial court erred in admitting the deposition of Twighla Huber, the defendant's girlfriend, who was not present at trial. The admission of the deposition, he claims, violated his right to confront the witnesses against him. Prior to trial, defense counsel deposed Huber, who had contacted the police about the defendant's involvement in the crime. Unable to locate Huber, the State at trial sought to introduce the deposition taken by defense counsel. The trial court admitted the deposition over the defendant's objection. The defendant contends that the deposition was a discovery tool not taken for use at trial and was unreliable because defense counsel's questioning did not take the form of cross-examination during the deposition or attempt to challenge the veracity of the witness on any point. He also contends that the State failed to carry its burden of establishing the unavailability of the witness.

By taking or actively participating in a deposition, a defendant may waive his right to object on confrontation grounds to the State's use of the deposition at trial. *Abner v. State* (1985), Ind., 479 N.E.2d 1254; *Roberts v. State* (1978), 268 Ind. 348, 375 N.E.2d 215; *Gallagher v. State* (1984), Ind.App., 466 N.E.2d 1382. *See also Hammers v. State* (1987), Ind., 502 N.E.2d 1339.

Furthermore, separate and apart from the issue of waiver, the defendant's right of confrontation was not violated. In *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, the United States Supreme Court outlined the two-prong test under the Confrontation Clause that requires the state to: 1) establish the unavailability of the declarant whose statement the state wants to use against the defendant, and 2) prove that the statement bears certain "indicia of reliability." The defendant claims that the State failed to show the unavailability of the witness and that the deposition does not satisfy the principal purposes of cross-examination—challenging the declarant's perceptions and memory and ensuring that the declarant's language conveys the intended meaning. He claims that the deposition lacks reliability because his counsel's questioning was not in the form of leading questions and the nature of the testimony elicited was

different from the type of testimony that would be elicited during a standard cross-examination.

At the time of trial, the State showed that Huber had not responded to a subpoena and that diligent efforts were made to locate her. One detective testified that he unsuccessfully tried to locate her through her last known address and her place of employment; that he contacted the foster home where her children lived and they had not heard from her; that he contacted her parents, and an aunt and uncle, none of whom had heard from her; and that he checked various business establishments likely to have contact with her. He also had no success in pursuing a lead that she had been in touch with the welfare department in another city. The State sufficiently demonstrated that the witness was unavailable.

■ Recorded testimony taken by defense counsel during which he questions a declarant completely and comprehensively about the declarant's memory and perceptions of the incidents surrounding the crime, possible bias, and the veracity of the statements, may satisfy the reliability requirement. *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531; *Abner*, 479 N.E.2d 1254; *Gallagher*, 466 N.E.2d 1382.

■ Huber's deposition was taken by defense counsel. The sworn testimony was recorded and signed by the witness and thus complied with the requirements of Ind. Trial Rule 32(A)(3). Defense counsel conducted an extensive examination covering seventy-six pages regarding Huber's personal and criminal history, her memory and perceptions of the events in light of her possible intoxication, her stormy relationship with defendant, and the veracity of her statements. The deposition comports with the principal purposes of cross-examination and, therefore, provides sufficient "indicia of reliability." The defendant's right of confrontation was satisfied and the admission of the deposition in lieu of the witness's in-court testimony was not error.

### 3. Limitation of Cross–Examination

The defendant contends that the trial court improperly limited his cross-examination of Dr. Hawley, the pathologist, concerning needle puncture marks found on the victim's chest. He contends that by denying him the right to pursue this line of questioning the court violated his Sixth Amendment right to confront and cross-examine the witness.

As the pathologist began to answer questions during cross-examination about the puncture marks found on the victim's chest, the State objected and with preliminary questioning established that the puncture marks were unrelated to the cause of death. The State maintained that the line of questioning was irrelevant to any issue in the trial. The defendant argued that the evidence was an anatomical finding forming part of the doctor's report and was therefore admissible. The trial court conditionally permitted defense counsel to pursue the line of questioning. The pathologist testified that the tissue surrounding the area was tested for cocaine and caffeine. The State objected again on the grounds of relevance and moved to strike the testimony and to have the jury admonished. The trial court sustained the objection and granted both motions because defense counsel failed to establish the relevance of the questioning to any issue in the trial.

■ The right of confrontation assured by the Sixth Amendment requires that a defendant be afforded an opportunity to conduct a full, adequate and effective cross-examination. *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. However, imposing reasonable limits upon cross-examination is a determination properly within the discretion of the trial court. *Munn v. State* (1987), Ind., 505 N.E.2d 782. Only a clear abuse of that discretion warrants reversal. *Sweet v. State* (1986), Ind., 498 N.E.2d 924. Furthermore, if the offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. *Fox v. State* (1987), Ind., 506 N.E.2d 1090; *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723.

The defendant fails to identify the relevance of the elicited testimony. His general contention that the mere act of limiting his cross-examination violates his right of confrontation is without merit. The trial court acted properly in limiting the defendant's cross-examination.

### 4. Prior Inconsistent Statement of Defendant

During cross-examination of the defendant, the State asked him about his prior statement in which he claimed that the assisting detective had threatened him, "put words in his mouth," and told him it would be better if he went along with the police version of what happened. The defendant contends that it was error to allow the questioning as it violated a constitutional right. He does not designate which right he deems to have been violated or cite to any authority for his proposition. Failure to support his proposition with authority waives the issue for appeal. *Speed v. State* (1986), Ind., 500 N.E.2d 186.

Regardless of waiver, when a defendant takes the stand to testify in his own behalf, he becomes subject to all rules that govern cross-examination of witnesses. *Lambert v. State* (1983), Ind., 448 N.E.2d 288; *Pearish v. State* (1976), 264 Ind. 339, 344 N.E.2d 296. Prior inconsistent statements, including prior testimony, may be used to impeach a witness. *Lewis v. State* (1983), Ind., 451 N.E.2d 50; *La-Bine v. State* (1983), Ind., 447 N.E.2d 592. Here, the prior statement was properly used to impeach the defendant.

### 5. Exhibits Shown to Jury During Deliberations

After the jury had retired to deliberate, the jury foreman sent a note to the judge requesting, "all pictures of [the victim's] body lying in the alley, as well as the pictures depicting head injuries sustained by [the victim]." The parties were notified, and the trial court over the defendant's objection sent all exhibits except the lengthy Huber deposition to the jury. Shortly thereafter, the jury foreman sent a second note to the judge which requested the replay of the defendant's videotaped confession. Over objection by the defendant, the trial court replayed the videotaped confession for the jury with all parties present. The defendant asserts that such conduct is an abuse of trial court discretion.

The defendant asserts that his videotaped confession was analogous to a written statement used for impeachment purposes and not as substantive evidence. The confession was admitted during the State's case-in-chief. Citing *Pearson v. State* (1982), Ind., 441 N.E.2d 468, 476, the defendant argues that it is error to permit a writing containing prior inconsistent statements of a witness that was admitted for impeachment purposes only to go to the jury room during deliberations. *Pearson* rested upon *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508, which expressly held that "permitting writings containing prior statements of a witness to go to the jury room is an abuse of discretion" and also adopted the rule found in § 5.1 of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice):

5.1 Materials to jury room.

(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the ... exhibits and writings which have been received in evidence, *except depositions.*

(b) Among the considerations which are appropriate in the exercise of this discretion are:

(i) whether the material will aid the jury in a proper consideration of the case;

(ii) whether any party will be unduly prejudiced by submission of the material; and

(iii) whether the material may be subjected to improper use by the jury.

*Thomas,* 259 Ind. at 540–41, 289 N.E.2d at 509–10 (emphasis in original decision). The rationale of *Thomas* did not limit its application to impeachment as opposed to substantive evidence.

■ Applying these considerations, we find no abuse of discretion in replaying the videotaped confession. Because it was specifically requested, the replay was likely to aid the jury in its deliberations. Furthermore, the possibility of undue prejudice or improper use was minimized because the jury's exposure to the confession was limited to a single replay in the presence of the trial court.

■ The defendant further claims that the trial court erred in sending the exhibits to the jury room upon the jury's request for certain photographs of the victim. The defendant argues that the value to the jury was outweighed by prejudice to him and that the sending of the exhibits emphasized the physical evidence over the testimonial evidence. Because the jury requested the exhibits and because such re-examination enabled the jurors to view such evidence to assist them in evaluating the testimonial evidence, we find that the defendant has not shown an abuse of discretion.

### 6. Erroneous Instructions

Over the defendant's objection, the trial court instructed the jury that the deposition was to be considered in the same manner and subject to the same tests as other testimonial evidence. The defendant contends that this instruction constituted reversible error because it singled out and emphasized the deposition testimony over the other evidence.

■ In its instructions to the jury, the trial court should not single out the testimony of a witness and "attack its credibility or indicate an opinion as to the weight that it should be accorded." *Beasley v. State* (1977), 267 Ind. 396, 401, 370 N.E.2d 360, 363. *Accord Dipert v. State* (1972), 259 Ind. 260, 286 N.E.2d 405.

■ The instruction in the present case did not express an opinion on the weight to be accorded the deposition of witness Huber. To the contrary, the instruction informed the jury that the deposition was not entitled to any greater or lesser weight by virtue of the manner of its admission. The instruction is analogous to those wherein the trial court instructs the jury as to expert testimony, *Lynn v. State* (1979), 271 Ind. 297, 392 N.E.2d 449, or a defendant's confession. *Tanner v. State* (1984), Ind., 471 N.E.2d 665. The trial court did not err in giving this instruction.

The defendant contends that the final instruction that informed the jury that voluntary manslaughter is a lesser-included offense of Count I, murder, but not Count II, felony murder, nor Count III, robbery, had the effect of directing the jury to find him guilty of murder. At trial the defendant objected to the instruction on the basis that voluntary manslaughter was a lesser-included offense of felony murder. Recognizing that this basis was erroneous, he raises different grounds on appeal.

■ A defendant may not state one reason for an objection at trial and then rely upon another on appeal. *Goodman v. State* (1985), Ind., 479 N.E.2d 513; *Phelan v. State* (1980), 273 Ind. 542, 406 N.E.2d 237. When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule on it at the appropriate time, he is deemed to have waived that possible error. *Goodman*, 479 N.E.2d 513; *Phelan*, 273 Ind. 542, 406 N.E.2d 237. Moreover, grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal. *Brown v. State* (1981), 275 Ind. 441, 417 N.E.2d 333. The defendant has waived this issue.

Notwithstanding waiver, we further disagree with and reject the defendant's argument that the instruction had the effect of saying "while it may be a lesser included offense of murder, that really makes little difference, since there was a Felony Murder and a Robbery, you can't consider any lesser included offenses anyway." The instruction was proper.

The defendant also contends that the final instruction on flight incorrectly states the law by directing the jury to assume that flight had occurred. He contends the jury should have been instructed to determine if there was flight and from that finding they could draw an inference of guilt.

At trial, the defendant argued that there was insufficient evidence of flight to warrant the giving of the instruction, not that the instruction assumed flight. The State correctly points out that any grounds not raised at trial are waived for purposes of appeal. *Goodman,* 479 N.E.2d 513. However, the defendant in his brief does suggest that the evidence is insufficient to support the giving of the instruction. We consider then only whether the evidence supported the giving of this instruction.

■ The record shows that the defendant, after beating and jumping on the victim, ran to his girlfriend's house nearby where he told her that he thought he had killed a man. That he turned himself in nineteen hours later, he claims, militates against the giving of the flight instruction. We disagree. The evidence here is sufficient to support the giving of the instruction.

## 7. Refusal of Tendered Instructions

The defendant also claims error in the trial court's refusal of his tendered instructions on reckless homicide, involuntary manslaughter, and battery as lesser included offenses of murder.

■ In reviewing the refusal of a tendered instruction, we must determine: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and, (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Williams v. State* (1980), 273 Ind. 105, 402 N.E.2d 954; *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836.

■ The test for determining whether an instruction on a lesser included offense should be given involves two components. One addresses whether the claimed lesser offense is either inherently or factually included in the language of the statute and the document charging the greater offense. *Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1372. The second component involves examining the evidence to determine whether the evidence warrants an instruction on the lesser offense. *Id.* An instruction on the lesser offense is warranted where a serious evidentiary dispute exists respecting the element that distinguishes the greater from the lesser offense. *Id.*

■ Because of the second component of the test, we find that the evidence does not support the giving of an instruction on any of the claimed lesser included offenses.

In his confession, the defendant admitted beating and robbing the victim. The beating began while the two were in the victim's car, which was stopped in an alley. The pathologist testified that the victim suffered three distinct attacks. The victim was struck in the head with a hard object which left regular indentations. These wounds were likely caused by the butt of the large folding knife the defendant had taken from Huber's bedroom the evening before. The second attack involved strangulation by ligature, which left unmistakable marks on the victim's neck and jaw. The strangulation was sufficiently severe to have killed the victim within several minutes. These attacks probably occurred in the victim's car and accounted for some of the blood found there. The third and most brutal attack occurred while the victim was lying on the ground outside the car. The collapse of victim's facial bones resulted from the defendant jumping on the victim's head at least three times. This attack caused the victim's immediate death. Evidence was also presented that the victim was extremely intoxicated. After the defendant went to Huber's residence, he stated that he thought he had killed a man.

The defendant testified that the victim precipitated the attack by making a forcible homosexual advance on him. He stated that he was merely trying to resist the victim's advances. He admitted to stomping on the victim after the two were outside the parked car, but denied that he was aware that the victim had received fatal injuries. He also denied robbing the victim.

Reckless homicide is a killing committed with a plain, conscious, and unjustifiable disregard of harm that might result and

the disregard involves a substantial deviation from acceptable standards of conduct. Ind.Code § 35–42–1–5, *in conjunction with* Ind.Code § 35–41–2–2(c). Murder, on the other hand, requires as a minimum a killing committed by a perpetrator who engaged in the killing with an awareness of a high probability that he was doing so. Ind. Code § 35–42–1–1, *in conjunction with* Ind.Code § 35–41–2–2(b). Thus, an instruction on reckless homicide was warranted only if there was a serious evidentiary dispute as to whether the defendant committed the attacks recklessly but not knowingly. We find that the sequence and severity of the defendant's attacks against an extremely intoxicated individual overwhelmingly preclude any reasonable possibility that the defendant's conduct involved unjustifiable disregard of possible harm as opposed to an awareness of a high probability that he was engaged in killing. The trial court properly refused the tendered instruction on reckless homicide.

The crime of involuntary manslaughter contemplates an incidental killing that occurs during the commission or attempt to commit one of the crimes enumerated in Ind.Code § 35–42–1–4. *Whipple,* 523 N.E.2d at 1372. As in *Whipple,* the only enumerated crime applicable to the facts is battery. There is no evidentiary dispute as to the element that distinguishes murder from battery with an incidental resulting killing. The evidence clearly demonstrates that the defendant knowingly killed when he struck and strangled the victim and then jumped on the victim's head at least three times. The trial judge did not err in refusing the defendant's tendered instructions on involuntary manslaughter and battery.

The defendant also argues that his tendered instructions on the defense of intoxication should have been given because the final instruction on intoxication was inadequate. The final instruction informed the jury that intoxication may render the defendant incapable of forming the required culpability for the crime. We find that the court's instruction adequately covered the subject and that it was not error to refuse to give defendant's tendered instructions.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.