James G. ASCHERMAN, Appellant–Petitioner Below,

v.

STATE of Indiana, Appellee–Respondent Below.

No. 43A03–9010–CR–00442.

Court of Appeals of Indiana,
Third District.

Oct. 28, 1991.

Howard S. Grimm, Jr., John M. Haecker, Fort Wayne, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee-respondent.

STATON, Judge.

## OPINION ON PETITION FOR REHEARING

James Ascherman petitions for rehearing, alleging that the July 24, 1991, 575 N.E.2d 277, opinion incorrectly disposed of Issue C raised in his appellate brief. Issue C (Issue III in the published opinion) concerned the procedure by which State's Exhibit 10 was reviewed by the jury. The Brief of the Appellant, at p. 22 stated: "Ascherman also sought, on the authority of *Thomas v. State* (1972) 259 Ind. 537, 289 N.E.2d 508, to keep State's Exhibit 10 from going to the jury. [R. III. pp. 647–659] This request was refused by the trial court."

Ascherman actually requested a mistrial after this exhibit and a companion exhibit were being reviewed by the jury. A review of the portion of the record cited by Ascherman revealed that State's Exhibit 10 and Defendant's Exhibit C (statements to police made by State's witness Tammy Sams on December 14 and December 15, 1989, respectively) had been admitted into evidence near the end of a day of trial.[1] When court convened the following morning, the trial court disclosed the procedure by which the jury was reviewing the exhibits. He noted that he had allowed the exhibits into evidence at the parties' insistence and that they were lengthy statements. Upon the jurors' arrival that morning, the court permitted them to read the statements in their deliberation room. This was to take place before the jurors reconvened to hear additional testimony. Record, pp. 642–43.

Ascherman objected to the procedure then in use and argued that he had suffered irreparable harm. He moved for a mistrial, citing *Thomas, supra,* for the proposition that a jury which was permitted to study at leisure a statement offered for impeachment purposes might give undue weight to the statement. He noted that the *Thomas* case involved review of a statement during deliberations and that his jury was not then engaging in deliberations. While distinguishing *Thomas,* he nevertheless found the procedure to be prejudicial to him.

The allegation of error which Ascherman preserved for appeal was whether the trial court erred in denying his motion for a mistrial. The July 24 decision considers this allegation of error, holding that the trial court did not abuse its discretion in permitting the jurors to examine Exhibit 10 in the deliberation room during a break in the presentation of evidence and that Ascherman was not subjected to a position of grave peril necessitating the declaration of a mistrial.

Ascherman contends that the jurors' examination of Exhibit 10 was not limited to the review during the trial; rather, the jurors were ultimately permitted to review Exhibit 10 during *deliberations.* The portion of the record now cited by Ascherman in his petition for rehearing indicates that the jurors were sent all the exhibits (except drugs) at some point before or after deliberations commenced. He asserts in his petition for rehearing (although he did not do so in his appellant's brief or reply brief) that he was not advised prior to the jury beginning deliberations that this procedure would be followed. At some point during deliberations, the procedure was apparently brought to the attention of Ascherman or his counsel as the trial court permitted Ascherman to "make some record" with respect to the procedure:

---

1. Ascherman had cross examined a State's witness with respect to portions of State's Exhibit 10. The State moved to admit the whole statement into evidence under the "rule of completeness." Ascherman then requested that both Sams' statements (State's Exhibit 10 and Defendant's Exhibit C) be admitted into evidence so

that "the saw could cut both ways." Record, p. 560–1. Both statements were admitted into evidence, accompanied by a limiting instruction that the jury was to ignore uncharged crime and to consider the statements only to determine Sams' credibility.

Resuming for the purpose of allowing the defendant to make some record with respect to a matter that has occurred. I note that the jury went out at 3:20 p.m. It's now 6:40 p.m., which means that they've been out about 3 hours and 20 minutes. About 30–40 minutes ago or so—well, first I want to say that I did send to the jury all of the instructions, preliminary and final, and I also had sent to them all of the evidence except the actual drugs which I didn't send in which I'll send them if they request them.

Record, p. 770.

■ Ascherman apparently requested to "make some record" but did not request affirmative relief from the trial court upon learning that the exhibits had been sent to the jury during deliberations (i.e., he did not move for a mistrial upon gaining this information). While Ascherman could have afforded the trial court the opportunity to rectify the perceived harm, he elected to make a record for appellate purposes. This amounts to waiver. *See Ingram v. State* (1989), Ind., 547 N.E.2d 823, 829.

Notwithstanding waiver, a review of the cases Ascherman relies upon may be helpful.

In *Thomas,* our supreme court adopted the ABA Rule concerning materials sent to the jury room which provided:

(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been received in evidence, except depositions.

(b) Among the considerations which are appropriate in the exercise of this discretion are: (i) whether the material will aid the jury in a proper consideration of the case; (ii) whether any party will be unduly prejudiced by submission of the material; and (iii) whether the material may be subjected to improper use by the jury.

*Id.,* 289 N.E.2d at 509.

The *Thomas* case involved a State's witness who had made two statements naming Thomas as the killer, but testified to the contrary during Thomas' trial. The previ-

ous statements (offered for impeachment purposes) were with the jury during deliberations. Thomas' conviction was reversed, the court finding that the witness statements were similar to a deposition and that their submission to the jury during deliberations violated all three considerations for the judge's discretion. The statements were of little aid since they were not offered for the truth of the matters contained therein. The statements were prejudicial as the evidence presented was highly conflicting. The risk was high that the statements would be subjected to an improper use (i.e., considered for the truth of the matters contained therein). *Thomas, supra,* at 509–10.

The court specifically stated: "permitting writings containing prior statements of a witness to go to the jury room is an abuse of discretion." *Id.* at 510.

The *Thomas* rule was subsequently considered in *State v. Harden* (1986), Ind., 496 N.E.2d 35:

This Court held in *Thomas* that reversible error occurred when the trial court allowed the jury to take into deliberations transcripts of prior inconsistent statements which had been used to impeach State's witnesses who had surprised the prosecution by giving exculpatory testimony. Among the factors which weighed in this decision were the highly conflicting nature of all the evidence and the danger that the impeaching statements would be considered by the jury as substantive evidence and given undue influence. *Under those circumstances,* this Court held 'that permitting writings containing prior statements of a witness to go to the jury room is an abuse of discretion.' (citation omitted) Although in this case most of the exhibits sent to the jury room had been offered at trial as substantive evidence, one of the exhibits was precisely the type of evidence which the *Thomas* jury was allowed to review at its leisure, and which this Court held prejudiced the defendant. Additionally, as in *Thomas,* the evidence at trial was quite conflicting. Harden's first trial ended when the jury

was unable to reach a verdict, and the second trial involved some recantation of earlier statements against him. Thus, the nature of the exhibits taken into deliberations was such that we are unable to say the trial court clearly erred in ruling that Harden was prejudiced.

*Id.* at 36–37 (emphasis added).

In *Ingram, supra,* the court again considered an allegation of error where requested materials were sent to jurors during deliberation and stated: "The rationale of *Thomas* did not limit its application to impeachment as opposed to substantive evidence." *Id.* at 828. The court noted that *Thomas* "expressly held that 'permitting writings containing prior statements of a witness to go to the jury room is an abuse of discretion'." However, the court applied the *Thomas* considerations and found no prejudicial error in the jury's exposure during deliberations to a *videotaped confession and photographs* of the victim.

*Thomas* and *Ingram* may be read for the proposition that allowing prior witness statements to go to the jury during deliberations is a *per se* abuse of discretion, while *Harden* suggests that an evaluation of the three specified discretionary factors is appropriate to determine if an abuse of discretion occurred.

A number of Indiana Supreme Court cases other than those cited by Ascherman have considered jury exposure to out-of-court statements during deliberations. However, none of these involve the precise type of statement challenged by Ascherman.[2] In *Jackson v. State* (1980) 274 Ind. 297, 411 N.E.2d 609, the court considered alleged error where all evidentiary exhibits including a transcribed confession were allowed into the jury room during deliberations. The court found no abuse of discretion despite the appellant's argument that the statement might be re-read to unduly influence the jury. The court found that

reexamination of the confession could assist the jury in determining if it was rationally and voluntarily made. *Id.,* 411 N.E.2d at 613. Accord: *Smith v. State* (1982), Ind., 437 N.E.2d 975, 977.

In *Long v. State* (1981), Ind., 422 N.E.2d 284, an appellant alleged error where all exhibits (including a confession) were viewed by the jury during deliberations. The court stated that all exhibits were reviewed in open court with both parties present and no undue emphasis was placed upon any particular exhibit. No error was found. *Id.* at 287.

In *Pearson v. State* (1982), Ind., 441 N.E.2d 468, all exhibits were sent to the jury during deliberations (including various written reports). The court noted the complained of exhibits were entered in evidence for their substantive value and were not limited to impeachment only. The exhibits did not create harmful conflicts in the evidence and the appellant failed to show how the jury was influenced to his prejudice. No abuse of discretion was found.[3]

■ To summarize, when reviewing alleged error in the submission of confessions or written reports to a jury during deliberations, our supreme court has evaluated the circumstances surrounding the submission and the potential for prejudice to the defendant. We conclude that the same evaluative process is appropriate where police statements made by a witness are reviewed by a jury during deliberations.

■ Sams' statements were not reviewed in isolation. The statements did not create harmful conflicts in the evidence. The evidence in Ascherman's case was not highly conflicting. Two confidential informants and Ascherman's former girlfriend (Sams) testified that Ascherman provided drugs to the informants in exchange for money. Various audio tapes were admitted

---

**2.** The instant case does not involve a *defendant's* confession to police but rather *witness* statements to police. Sams' statements were made when she faced drug charges similar to those against Ascherman.

**3.** This case was distinguished from *Thomas* on the basis of substantive vs. impeachment evidence and may be of limited precedential value to the instant inquiry, as subsequently our supreme court in *Ingram, supra,* stated that the rationale of *Thomas* was not limited to statements offered for impeachment.

into evidence which further disclosed Ascherman's participation in the drug sales.

Petition for rehearing denied.

HOFFMAN and RUCKER, JJ., concur.