Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 23 2014, 9:48 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK F. JAMES**
Anderson, Agostino & Keller, P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| T.M.T., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1405-JV-164 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
Cause No. 71J01-1312-JD-553

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

T.M.T. appeals his adjudication as a delinquent child for committing child molesting,[1] which would be a Class C felony if committed by an adult. He raises the following restated issues for our review on appeal:

I.      Whether sufficient evidence was presented to support his delinquency adjudication;

II.     Whether the State committed prosecutorial misconduct by improperly vouching for the child witness; and

III.    Whether the trial court abused its discretion by allowing the State to question T.M.T. on cross-examination on subjects not raised on direct examination.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In December 2013, T.M.T. lived with his mother, his twin brother, and his sister, R.T. in a mobile home in South Bend, Indiana. Also living in the home were Heather, a friend of T.M.T.'s mother, and her two daughters, S.H. and C.H., and Heather's brother and his wife and their two daughters. C.H. was nine years old during the period between November 1, 2013 and December 10, 2013. T.M.T. was fourteen years old during the same time period.

T.M.T. shared a bedroom with his twin brother at one end of the trailer, and the five girls shared another bedroom at the other end of the trailer. The girls' bedroom contained two mattresses on the floor pushed together where the girls slept. T.M.T. and his brother were not allowed in the girls' bedroom because Heather was worried about potential

---

[1] *See* Ind. Code § 35-42-4-3. We note that, effective July 1, 2014, a new version of this criminal statute was enacted. Because T.M.T. committed his crime prior to July 1, 2014, we will apply the statute in effect at the time he committed his crime.

2

molestations because one of her daughters had been previously molested. However, T.M.T. would sneak into the girls' room at night. Several times, his sister R.T. would wake up and scream at him to leave or she would run to wake up her mother or Heather. At some point, a lock was installed on the girls' bedroom door to keep T.M.T. out of the room. Even after the lock was installed, there was another night when R.T. woke up to find T.M.T. sneaking into the room.

One night around Thanksgiving 2013, T.M.T. sneaked into the girls' bedroom. C.H. woke up when T.M.T. inserted his penis into her vagina. The other girls were all asleep at the time. Around December 10, 2013, C.H. told her mother what had happened, and the authorities were notified.

Initially, when he spoke with the police, T.M.T. stated that he could not remember going into the girls' bedroom. He then remembered that he had been in the room, but he could not remember why he had been in the room. Finally, he said he had been in the room looking for a phone to call his older sister, who did not live at home anymore, and who he claimed he was not allowed to talk to. *Tr.* at 59. At that time, his mother, who was present in the interview, corrected him and told him not to lie because T.M.T. knew he was allowed to talk to his sister, but that he was grounded from the phone. *Id.* During the interview, T.M.T. did tell the police of one time when he entered the girls' bedroom and stepped on S.H.'s hair, then sat down on the bed, and was looking for the phone.

On December 19, 2013, the State filed a delinquency petition alleging that T.M.T. committed one count of child molesting, which would be a Class B felony if committed by an adult, and one count of child molesting, which would be a Class C felony if committed

by an adult. A fact finding hearing was held on February 10, 2014. At the hearing, R.T. testified that T.M.T. was in the girls' bedroom three times that she was aware of – once, when T.M.T. was chasing the cat, another, when she saw him sitting next to C.H. and S.H. on the bed, and a third time, when she caught him peeking into the room after the lock had been installed. *Id*. at 45. R.T. also told of another time when she and T.M.T. had a plan to sneak out of the house and go to their cousin's residence to talk to their sister, and T.M.T. came into the room to get R.T., but they did not end up going because their mother was home. *Id*. at 49-50. R.T. also stated that the time T.M.T. came into the bedroom for the cat was when he stepped on S.H.'s hair and woke her up. *Id*. at 50.

T.M.T. testified that he went into the girls' bedroom once to look for the cat, and the other times were to look for the phone. *Id*. at 75. He stated that, each time, R.T. would wake up and scream at him to leave or would run to wake up their mother or Heather. *Id*. Over the objection of T.M.T.'s counsel, the State questioned T.M.T. about inconsistencies between his testimony at the fact finding hearing and his statement to the police. *Id*. at 78-80.

At the conclusion of the fact finding hearing, the juvenile court took the case under advisement. On February 19, 2014, the court issued its order on delinquency fact finding and adjudicated T.M.T. to be a delinquent for committing the offense of child molesting, which would be a Class C felony if committed by an adult. The juvenile court also found that T.M.T. did not commit the offense of child molesting, which would have been a Class B felony if committed by an adult. On February 21, 2014, an amended order was issued

4

to correct some discrepancies that did not change the finding of delinquency. T.M.T. now appeals.

## DISCUSSION AND DECISION

### I. Sufficient Evidence

T.M.T. argues that insufficient evidence was presented to support his delinquency adjudication for child molesting. When the State seeks to have a juvenile adjudicated as a delinquent child for committing an act which would be a crime if a committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *K.F. v. State*, 961 N.E.2d 501, 506 (Ind. Ct. App. 2012), *trans. denied*. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

At the fact finding hearing, C.H. testified that T.M.T. "sticked his thing inside my hoo-ha." *Tr.* at 20. She then clarified what she meant by "thing" and "hoo-ha" by circling the body parts on two drawings in court. *Id.* at 22; *State's Exs.* 1, 2. "Thing" meant T.M.T.'s penis, and "hoo-ha" meant C.H.'s vagina. *Tr.* at 22; *State's Exs.* 1, 2. "A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (citing *Ferrell v. State,* 565 N.E.2d 1070, 1072-73 (Ind. 1991)). This applies equally to delinquency adjudications. *See T.G. v. State*, 3 N.E.3d 19, 23 (Ind. Ct. App. 2014) ("The

uncorroborated testimony of a single witness may suffice to sustain the delinquency adjudication."), *trans. denied*.

In the order on delinquency fact finding, the juvenile court specifically found that T.M.T.'s testimony was not credible and that "all other testimony [was] credible." *Appellant's App*. at 16. T.M.T. points to testimony by R.T. that, before the lock was installed on the bedroom door, Heather asked the girls if T.M.T. had been touching them, and all of the girls, including C.H., said no. *Tr*. at 47. T.M.T. argues that this testimony is inconsistent with C.H.'s testimony that he molested her and the trial court's finding that it found all testimony other than that of T.M.T. credible.

T.M.T. is not correct as the testimony by R.T. clearly referred to a conversation that occurred before the lock was installed on the bedroom door and prior to the molestation testified to by C.H. Thus, there is nothing inconsistent between R.T.'s testimony regarding a prior conversation and C.H.'s testimony about the molestation. T.M.T.'s argument is merely a request to reweigh the evidence and judge the credibility of the witnesses, which we cannot do on appeal. *K.F.*, 961 N.E.2d at 506. We conclude that sufficient evidence was presented to support T.M.T.'s delinquency adjudication.

## II. Improper Vouching

When reviewing an allegation of prosecutorial misconduct, we make two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct, and if so, we next determine whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Ramsey v. State,* 853 N.E.2d 491, 498 (Ind. Ct. App. 2006),

6

*trans. denied.* The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Neville v. State,* 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012), *trans. denied.* Here, T.M.T. concedes that he did not object to the challenged statements made by the prosecutor during closing argument. Where a defendant does not raise a contemporaneous objection, request an admonishment, or, where necessary, request a mistrial, the defendant does not properly preserve his claims of prosecutorial misconduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

"To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error." *Neville,* 976 N.E.2d at 1258. Fundamental error is an "extremely narrow exception" to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. *Cooper*, 854 N.E.2d at 835. For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm." *Neville*, 773 N.E.2d at 817. The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id.* Instead, "it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural

7

opportunities for the ascertainment of truth to which he would have been entitled." *Davis v. State*, 835 N.E.2d 1102, 1107-08 (Ind. Ct. App. 2005), *trans. denied*.

T.M.T. argues that the prosecutor committed misconduct when she made certain statements during closing argument. He contends that the statements constituted improper vouching of the victim because they "essentially told the fact finder that victim was telling the truth." *Appellant's Br.* at 4. Because the victim's credibility was at issue in this case, T.M.T. asserts that such improper vouching constituted fundamental error because "it caused tremendous prejudice" to him. *Id*.

It is well settled that vouching for witnesses is generally impermissible. *Lainhart v. State,* 916 N.E.2d 924, 938 (Ind. Ct. App. 2009). However, a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence. *Cooper,* 854 N.E.2d at 836. In addition, an attorney may properly argue any logical or reasonable conclusions based on his or her own analysis of the evidence. *Neville*, 976 N.E.2d at 1260 (citing *Bennett v. State*, 423 N.E.2d 588, 592 (Ind. 1981)).

At the beginning of the State's initial closing argument, the prosecutor stated, "Children lie to get out of trouble, not into trouble, so it doesn't make sense that she would create this story that's created a lot of trauma for herself." *Tr.* at 89. As T.M.T. argues, this case centered on credibility, the credibility of C.H. versus the credibility of T.M.T. In her opening remarks, the prosecutor pointed out that children do not generally lie in order to make trouble for themselves, but instead to get out of trouble. If the trial court agreed with that statement, it needed to then determine whether it made sense that C.H. made up

8

an allegation that caused so much trouble. The prosecutor then discussed T.M.T.'s statement and questioned why, when he was caught entering the bedroom prior to C.H.'s allegations, he would not tell his mother that he was going into the girls' room to get the phone and only state that was why he was going into the room after C.H. alleged he was in the room molesting her. *Id*. at 89-90. Instead, prior to the allegations, T.M.T. denied going into the room at all. Although not stated explicitly, the prosecutor's statement was commentary on the evidence to show that T.M.T.'s lies were intended to keep him out of trouble, which made it more likely that he was the one whose statements could not be trusted, and that C.H.'s statements could be trusted because they resulted in causing her more trouble. The prosecutor's statement did not personally vouch for the truth of the victim's testimony. Instead, it was commentary on why C.H.'s testimony was credible in light of the evidence.

In the State's rebuttal during closing arguments, the prosecutor argued that, "the [victim] does not have a reason to lie. The fact that she was so hesitant to talk corroborates her credibility." *Id*. at 92-93. During his closing, T.M.T.'s counsel had argued that T.M.T. did not tell his mother that he was going into the girls' bedroom to get the phone because he knew he was grounded and did not want to get himself into trouble. *Id*. at 90-91. He also asserted that the medical records stated that the victim's vaginal area was normal, so the State had failed to meet its burden of proof as to the child molesting. *Id*. at 92. However, the full text of the State's rebuttal shows that the prosecutor countered T.M.T.'s argument by discussing the medical evidence and then making the challenged statements. The statements were clearly commentary on the evidence presented. The State referenced

9

the victim's demeanor on the stand and her reluctance to talk about what T.M.T. had done and discussed a previous argument where the State contended, "She clearly did not want to talk about what happened and, in fact, apologized to [T.M.T.] for telling on him." *Id.* at 88-89. The State's assertions related to evidence presented during the fact finding hearing and were based on reasons which arose from the evidence. We conclude that there was no improper vouching, and, therefore, no prosecutorial misconduct.

### III. Scope of Cross-Examination

T.M.T. argues that the State's questioning of him on cross-examination exceeded the scope of direct examination and prejudiced him. When a defendant takes the stand to testify in his own behalf, he becomes subject to all rules that govern cross-examination of witnesses. *Ingram v. State*, 547 N.E.2d 823, 828 (Ind. 1989). Prior inconsistent statements, including prior testimony, may be used to impeach a witness. *Id.* Indiana Evidence Rule 611(b) states that, "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination." Therefore, on cross-examination a witness may be questioned on matters brought up on direct examination *and* matters that touch on the credibility of the witness.

Here, T.M.T. made two different statements about sneaking into the girls' bedroom at night, one to police and one on direct examination at the fact finding hearing. The State's questioning of T.M.T. on cross-examination highlighted that the two statements were inconsistent. The fact that the statement he gave to police prior to trial was different from the statement he made as a witness at the fact finding hearing called into question whether

10

T.M.T. was lying when he spoke to police or if he was lying on the witness stand. Additionally, the State's question to T.M.T. that, "[y]ou told the detective you didn't know of a reason [C.H.] would lie, right," was not a request for T.M.T. to vouch for C.H.'s testimony as T.M.T. contends. *Tr.* at 78. The State was merely highlighting a statement T.M.T. made to the police that was incriminating to T.M.T. We conclude that the State's cross-examination of T.M.T. was proper, and the trial court did not err in allowing the questioning.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.