Robert LEARY, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 45S00–8610–CR–867.

Supreme Court of Indiana.

June 13, 1988.

Nathaniel Ruff, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Robert Leary was found guilty by a jury in the Lake Superior Court, Criminal Division, of Murder, and was sentenced to a term of forty-five (45) years.

Leary raises two issues in this direct appeal as follows:

1. lack of sufficient evidence to establish intent to commit murder, and

2. refusal to give defendant's tendered instructions on voluntary manslaughter and involuntary manslaughter.

Evidence showed that Elizabeth Cochrane was Leary's aunt. She lived with the decedent, Rudy Szany, whom she described as just a good friend, at 4200 West 45th Avenue, Gary, Indiana. On the night in question, she heard a noise and saw Szany slump over on the table. Szany had been fatally shot in the head. Cochrane later described the noise as glass shattering and what she presumed to be a bullet, because a bullet had been shot into another open window in the kitchen the night before. Cochrane ultimately was able to call the police but had difficulty doing so because she had an attack resulting from diabetes which caused her to lose the use of one of her legs and her eyes. While she was attempting to get help, her nephew, Leary, forced his way into the house, and summoned the police. When Corporal Dennis Eaton of the Lake County Police Department arrived at the scene about 10:30 p.m., he observed Szany slumped over dead from a bullet wound to the head, bullet holes in two of the kitchen windows on the north and west sides, and a ladder lying against the house. Two casings were found, one near one of the windows containing a bullet hole, and the other casing elsewhere on the property. He also found a rifle underneath a carpet on a carseat located in a block building at the rear of the property. Gerald Szany, son of the deceased, identified the weapon as his .22 caliber rifle. He had kept the rifle at his father's house but had not seen it for months before September 26. A toolmark expert with the Lake County Police Department testified the two casings could have been fired by the rifle found in the block building.

Leary first denied any knowledge or involvement in Szany's death. In a third statement given to police, however, he admitted he shot Szany. He said he removed the rifle from the barn and went to the house. He climbed the ladder and looked into the kitchen window. After he fired the shot, he put the gun in the barn under some carpeting and went to the house, where he stayed until the police arrived. Leary stated his Uncle Szany had always "put him down." He said he did not intend to shoot him but his foot slipped and the rifle went off. He also stated he was only going to shoot into the house to scare Szany. In his statement to the police Leary was asked, "Why did you shoot your uncle?" He answered, "He was always puttin' me down, he never liked me and he would tell me if I had the heat on at my house he would kick me out." He was then asked, "When the gun went off did you mean to shoot your uncle?" He answered, "No I slipped off the ladder and the gun went off, I had almost decided to just get off the ladder and go home." Finally, he was asked, "Why did you have the gun on the ladder?" He answered, "I was

going to shoot into the house to scare my uncle." He further described how his Uncle put him down about everything and was asked, "Was the shooting the result of the putting you down all the time, and you could not take anymore?" His answer was, "Yes, I couldn't take anymore and he was always putting Becky down if she stuck up for me."

## I

■■■ Leary claims the State failed to prove the intent element necessary for a murder conviction. In reviewing a sufficiency question we do not weigh the evidence or judge credibility but are constrained to consider only that evidence most favorable to the State together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672. The elements of the offense of murder which must be proved by the State beyond a reasonable doubt are that the defendant knowingly and intentionally killed another human being. The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Cole v. State* (1985), Ind., 475 N.E.2d 306, 308. The evidence here was Leary acquired the rifle from its previously known resting place, climbed a ladder and fired a shot through a window into the victim's head. He then hid the rifle under some carpeting in the barn and returned to the scene, pretending to help his aunt. The fact he claims he intended only to scare the victim and that he was about to abandon his plan when his foot slipped, causing him to accidentally shoot the victim, go to the weight and credibility of the testimony. There was sufficient evidence before the jury for them to conclude Leary purposely and intentionally killed the victim.

## II

■■■ Leary tendered instructions to the jury on voluntary and involuntary manslaughter which were refused by the court.

In *Roland v. State* (1986), Ind., 501 N.E.2d 1034, 1039, the law on this subject was stated:

The test for determining whether it was error to refuse an instruction on a lesser included offense is two-fold: 1) did the language of the statute and the charging document necessarily include the lesser offense in the greater; and 2) was evidence introduced at trial to which the included offense instruction was applicable. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 294. Furthermore, the evidence must be subject to interpretation not only that the lesser offense was committed, but also that the greater offense was not. *Id.; Tawney v. State* (1982), Ind., 439 N.E.2d 582, 587, *reh. denied* (1982).

Leary's tendered instruction #2 on voluntary manslaughter read as follows:

VOLUNTARY MANSLAUGHTER is a lesser included offense in the crime of Murder. Voluntary Manslaughter is defined by statute in Indiana in pertinent part as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat, commits Voluntary Manslaughter, a Class D felony.

The existence of sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter.

The term "sudden heat" means an excited mind. It is a condition that may be created by strong emotion such as anger, rage, sudden resentment, jealousy or terror. It may be strong enough to obscure the reason of an ordinary person and prevent deliberation and meditation. It can render a person incapable of rational thought.

Sudden heat is the result of provocation by the victim sufficient to produce a similar state of mind in a reasonable person. In order to convict the defendant of Murder, the State has the burden of disproving the presence of sudden heat beyond a reasonable doubt.

Voluntary manslaughter and involuntary manslaughter are both generally lesser in-

cluded offenses of murder. But there must also be evidence introduced at trial to prove the lesser offense. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872; *Henning v. State* (1985), Ind., 477 N.E.2d 547, 550–551. Here, there was no evidence of sudden intense passions that might be presumed to obscure Leary's reason and render him incapable of rational thought. The evidence was that he deliberately obtained the gun and climbed up to the window and shot Szany in the head while he was sitting at a table watching TV with his back to Leary. Leary does not deny these facts. The only explanation he gives to mitigate the act from murder was that he intended only to scare Szany and that his foot slipped and he accidentally fired the shot. Even if the jury believed either or both of these statements, it would not justify a finding of guilty of voluntary manslaughter.

The same is true of involuntary manslaughter. Leary's tendered instruction was:

INVOLUNTARY MANSLAUGHTER is a lesser offense included in the charge of Murder, and is defined by statute in Indiana in pertinent part of (sic) follows:

A person who kills another human being while committing or attempting to commit Battery, commits INVOLUNTARY MANSLAUGHTER, a Class C felony.

The offense of BATTERY is defined by statute in Indiana in pertinent part as follows:

A person who knowingly or intentionally Louches (sic) another person in a rude, insolent, or angry manner commits battery.

Battery as above defined, may include the shooting of a person with a firearm.

There is no evidence from which the jury could reasonably find that Leary knowingly and intentionally committed or attempted to commit a battery on Szany and in the process caused his death. There was evidence Leary was angry with Szany for always putting him down, and deliberately obtained the rifle, climbed the ladder, and shot him in the head. Leary's own state-

ment he intended only to scare Szany and accidentally fired the gun when his foot slipped, does not bring the facts within the definition of the tendered instruction. The trial court was justified in determining the facts were not subject to the interpretation that while committing a battery, Leary caused the death of the victim. Either Leary purposely and intentionally killed Szany, or it happened accidentally when his foot slipped. The trial court was justified in finding the evidence was not subject to the interpretation the lesser offense was committed and the greater was not. *Roland, supra.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.