**Maurice TAYLOR, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45S00–8706–CR–00555.

Supreme Court of Indiana.

Dec. 2, 1988.

Raymond C. Sufana, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

In a bench trial, defendant Maurice Taylor was convicted of murder and sentenced to thirty years imprisonment. Defendant raises two issues for our review: 1) sufficiency of evidence; and 2) the trial judge's questioning of a witness.

### Sufficiency of Evidence

Defendant contends that the evidence supports only a conviction of voluntary manslaughter rather than murder because of his claim of "unrefuted" evidence that the victim was reaching under his parka for a gun when the defendant shot him. Fear that the victim was armed, defendant asserts, amounts to "sudden heat." Defendant admitted at trial that he shot and killed a human being.

An otherwise intentional killing of a human being is reduced to voluntary manslaughter when the murderer acts in a "sudden heat," a statutory mitigating factor. Ind.Code § 35–42–1–3. When reviewing a murder conviction to determine sufficiency of the evidence in regard to whether murder or voluntary manslaughter was committed, we treat the issue as we do all sufficiency issues. *Ronk v. State* (1984), Ind., 470 N.E.2d 1337, 1339. We will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223, *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

On a winter evening, defendant entered a gambling house and sat in a booth. About fifteen minutes later, Lucious Drinkard and his cousin, both acquaintances of defendant, entered and spoke with the operator of the house. A few days before, defendant and Drinkard had argued, perhaps with guns drawn, over some money. Defendant confronted Drinkard and demanded the return of the money. After first ignoring defendant, Drinkard turned, faced him, and told him to forget about the money. The operator offered to pay defendant. After Drinkard raised his hands, defendant pointed his revolver at Drinkard and fired. Drinkard turned and tried to reach the door. When Drinkard's cousin and the house operator believed defendant had fired all the revolver's bullets, they subdued him. Upon arriving, the police found two bullet slugs under Drinkard's body and the revolver with six spent casings in or near it. An autopsy which detailed the five bullet wounds determined that Drinkard died at the scene from a gunshot wound to the chest. A ballistics report connected two of the slugs to the revolver and determined that the other ones could have been fired from it.

■ Provocation sufficient for "sudden heat" exists where emotions of "anger, rage, sudden resentment, or terror ... obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1077. The existence of "sudden heat" is determined by the trier of fact. *McCann v. State* (1984), Ind., 466 N.E.2d 421. Where the judge sits as the trier of fact, his determination of a fact issue will be set aside if the nonconflicting evidence supports only a result contrary to his determination. *Holsclaw v. State* (1979), 270 Ind. 256, 257, 384 N.E.2d 1026, 1028.

■ In the present case, defendant's alleged fear of Drinkard stemmed from an argument a few days before the shooting. Defendant, with his weapon ready, confronted Drinkard and demanded the return of some money. Drinkard raised his hands to indicate that he didn't want any trouble. The defendant then rapidly fired the revolver six times, striking his victim with five shots. The trial judge could find either: 1) that Drinkard did not provoke the defendant on the night of the shooting; or 2) that the argument was too remote in time to sustain "sudden heat." *See Sears v. State* (1986), Ind., 494 N.E.2d 1286, 1287; *Burris v. State* (1983), Ind., 444 N.E.2d 1187, 1189. Defendant's insistence that we consider evidence that Drinkard was reaching under his parka for his gun merely asks us to reweigh conflicting testimony. The evidence is sufficient to establish defendant's guilt for murder.

*Questioning of Witness by Judge*

Defendant asserts that the trial judge's questioning of a defense witness compromised the court's impartiality and neutrality and prejudiced the defendant. At the end of a re-direct examination of a defense witness, the judge asked the witness the following question:

Q. Mr. [witness], I have just one (1) question for you. At the time you saw this first shot fired by Mr. Taylor, what was in Mr. Drinkard's hands at that time?

A. Some money. (R. 276).

In a bench trial, the trial judge in his discretion may ask questions of a witness "to aid in the fact-finding process as long as it is done in an impartial manner and the defendant is not prejudiced." *Swift v. State* (1970), 255 Ind. 337, 341, 264 N.E.2d 317, 320, *cited with approval in Fox v. State* (1986), Ind., 497 N.E.2d 221, 227.

The judge's question covered a fact to which other witnesses had testified. The defense witness's response confirmed the earlier testimony that the victim's raised hands held money. That the judge attached some importance to the response does not of itself prejudice defendant; the judge was not challenging the witness. *See McManus v. State* (1982), Ind., 433 N.E.2d 775, 779. The trial judge did not err in questioning the witness.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.