Paul STOREY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 15S00–8807–CR–669.

Supreme Court of Indiana.

April 12, 1990.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Paul Storey, was convicted of murder, for which he received the presumptive sentence of forty years. In this direct appeal, the defendant raises the following issues, which we restate as follows:

1. sufficiency of evidence;

2. evidence of past crime;

3. refusal of tendered instructions on lesser included offenses; and

4. refusal of self-defense instructions.

### 1. Sufficiency of Evidence

The defendant claims that the evidence is insufficient to show that he "knowingly" killed the victim. He argues that the discharge of his pistol was an accident, not a result of his deliberate act. The defendant alternatively contends that, even if the killing was knowingly committed, the evidence conclusively shows that he acted in sudden heat, which reduces murder to voluntary manslaughter.

An otherwise intentional or knowing killing of a human being is reduced to voluntary manslaughter where the killer acts in a "sudden heat," a statutory mitigating factor. *Taylor v. State* (1988), Ind., 530 N.E.2d 1185. When reviewing a murder conviction to determine the sufficiency of the evidence in regard to whether murder or voluntary manslaughter was committed, we treat the issue as we do all sufficiency issues. *Id.* In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence supporting the conviction shows that on June 29, 1985, the victim, James Richardson, and one of his friends went to the defendant's pool hall to confront him with information that Richardson's tool kit and his friend's boat engine had been taken by the defendant. Initially, Richardson and the defendant conversed casually, but tempers flared when an impasse was reached. The defendant twice told Richardson to leave. Richardson refused, saying he wanted to discuss the matter further. The defendant then pushed Richardson twice. Richardson responded by punching the defendant in the head. The two grappled each other and began to wrestle around the pool hall. A teenager left the pool hall and alerted a man sleeping on the front porch that a fight was occurring. The man entered to stop the fight, but Richardson's friend prevented him. During the fight, the defendant yelled for someone to call the police and for "Jane" or "Janice" to come and help him. The indecisive fight ended after the defendant poked Richardson in the eye. The two separated, each breathing heavily.

The defendant ran quickly upstairs and found his small-caliber pistol. When he returned, Richardson was walking toward

the exit with his shoulders slumped and his head down. Richardson's brother, who had been across the street, entered and saw the defendant point the handgun at Richardson. Having shouted that he ought to kill Richardson, the defendant pulled the trigger, but the pistol just clicked. Without turning to face the defendant, Richardson exited and walked toward his car. Cursing loudly, the defendant followed him and fired a shot over his head. Richardson continued to walk quietly to his car. As Richardson was about to enter his car, the defendant struck him in the back of the head with the pistol. Without responding, Richardson got in his car, which had its driver's side window down. While Richardson was trying to start his car, the defendant rammed the pistol into his cheek, leaving the mark of the barrel. The defendant withdrew the pistol, hesitated, then placed the pistol against Richardson's head and shot him.

While Richardson was rushed to the hospital, the defendant returned to the pool hall, went upstairs, and got a beer. He came back down, placed the pistol on one of the pool tables, and awaited the police. When the police arrived shortly thereafter, the pistol was nowhere to be found. Witnesses saw Jane Bruegge's car leave the pool hall shortly after the shooting. She was known to have been in the pool hall with the defendant shortly before the fight began.

Richardson died on July 7, 1985, as a result of the gunshot wound, which caused severe bleeding in his head. According to the pathologist, the type of wound indicated that the gun barrel was placed directly on the head, not just close to it, when the pistol was fired.

The jury was instructed on voluntary manslaughter and murder and returned a verdict of guilty for the latter.

■ The defendant testified that when he "punched" Richardson the second time with the pistol it discharged accidentally. Nevertheless, the jury could infer a knowing killing from the defendant's stating his intention to kill the victim, his pulling the trigger twice before, and the placing of the gun against Richardson's head. The use of a deadly weapon in a manner likely to cause death or great bodily harm permits the jury to infer the defendant's knowledge that he was killing another. *See Leary v. State* (1988), Ind., 524 N.E.2d 307; *Goolsby v. State* (1987), Ind., 517 N.E.2d 54. The finding of a knowing killing is supported by sufficient evidence.

■ The defendant also claims that the evidence conclusively shows that he acted in "sudden heat." Provocation sufficient for "sudden heat" exists where emotions of "anger, rage, sudden resentment, or terror ... obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1077. The existence of "sudden heat" is determined by the trier of fact, and the defendant bears the burden of showing its existence. *McCann v. State* (1984), Ind., 466 N.E.2d 421.

■ In the present case, the jury was presented with the defendant's version that he was acting under uncontrollable rage and anger after the fight had ended in the pool hall. The jury, however, could properly disbelieve this testimony and instead credit testimony that showed the defendant's deliberate and continued attack upon a quietly retreating and submissive opponent. The jury could properly find that the defendant's anger and rage were insufficient to obscure his reasoning when he shot Richardson.

The evidence was sufficient to support the conviction of murder.

### 2. Past Crime Evidence

The defendant asserts that the State was allowed to "impeach, discredit and unfairly prejudice [him] through cross examination about and the extrinsic evidence about the facts underlying [his] 1959 assault conviction through the guise or artifice of attacking [defense psychologist's] opinion" on the defendant's behavioral deficiencies. The defendant also claims that he did not "open the door" to such evidence by presenting

the psychologist's testimony because the testimony did not mislead the jury.

Although no insanity defense was filed, the defendant, over the State's objection, presented the testimony of a neuro-psychologist who had interviewed and tested the defendant to determine his mental condition and behavioral deficiencies. The psychologist did not indicate that the defendant was insane. Having reviewed the defendant's medical history dating back to 1968, the psychologist related that the defendant had suffered two incidents of trauma to his brain, which resulted in chronic organic brain disorder. The disorder was caused in part by an embolism that entered the defendant's brain while he was undergoing surgery around 1968. Basing his determination on the tests and the defendant's medical history, the psychologist concluded that the defendant's organic brain disorder reduced his capacity to handle stressful situations, to make judgments, and to control his impulses, especially fear. The defendant's actions in the present case, the psychologist stated, were consistent with his organic brain disorder.[1]

On cross-examination, the psychologist stated that the defendant had told him of an assault conviction in 1949 that was related to a domestic dispute. Upon reviewing his report, the psychologist said he believed that two separate incidents were involved, the assault and an unrelated incident of the defendant striking his wife in the early 1970s. On re-direct, the psychologist stated that he saw no connection between the earlier incidents of violence and the defendant's acts in the present case.

On cross-examination of the defendant, the prosecutor asked the following question:

Earlier, the Psychologist testified that you have told him that you were convicted of an assault back in 1949, is that the correct year?

Record at 635. Defense counsel objected and offered to show that the conviction was in 1959. Defense counsel asserted

that delving into the facts of the assault conviction was irrelevant, improper impeachment, and a reference to inadmissible evidence of past crimes. The prosecutor responded that the facts underlying the assault conviction were relevant to show that prior to the defendant's embolism he had shown violent behavior. The trial court overruled the defendant's objection and granted him a continuing objection to the evidence of the assault conviction. The State thereafter asked the defendant about the facts of the assault, in which he struck in the head a person with whom he had fought two weeks before. In the State's rebuttal, the prosecutor who handled the 1959 assault case against the defendant testified about the facts of the case and its outcome.

The defendant did not object to the cross-examination on the grounds that it exceeded the scope of direct examination. He instead objected and now asserts that the cross-examination and rebuttal were improper impeachment and inadmissible evidence of past crimes. Were it not for the psychologist's testimony, we would agree with the defendant.

 Evidence that shows the defendant's commission of unrelated crimes is generally inadmissible to prove his guilt. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. However, evidence of unrelated criminal activity that is relevant to a fact in issue is not inadmissible solely because it tends to show the defendant's guilt of another crime. *Christopher v. State* (1988), Ind., 531 N.E.2d 480; *Maldonado*, 265 Ind. 492, 355 N.E.2d 843. Regarding impeachment, only convictions for crimes involving dishonesty or false statement, or infamous crimes including treason, murder, rape, arson, burglary, robbery, and kidnapping may be used to impeach a witness. *Trice v. State* (1988), Ind., 519 N.E.2d 535; *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.

1. Indiana does not recognize diminished capacity as a defense to criminal activity. *Cardine v.*

*State* (1985), Ind., 475 N.E.2d 696.

In the present case, the State attempted to refute the opinion of the defendant's psychologist by attacking the information upon which it was based as well as its conclusion. The evidence of the facts of the 1959 assault conviction tended to refute the psychologist's opinion regarding the defendant's reduced capacity to handle stress and fear following the 1968 brain embolism and resulting organic brain disorder. Evidence of pre-existing behavioral deficiencies is especially relevant in this case because the psychologist only reviewed the defendant's medical history since 1968. In this regard, the evidence was not offered as proof of the defendant's guilt of the murder and thus was not erroneously admitted for that reason. *See Drollinger v. State* (1980), 274 Ind. 99, 103–04, 409 N.E.2d 1084, 1087 (cross-examination of defendant about officer who allegedly filed several unrelated charges against defendant held proper where defendant asserted that officer had harassed him).[2]

The questioning of the defendant about information he provided the psychologist was also relevant to show the basis upon which the opinion was formed. The jury was entitled to know the basis upon which it was formed to assist them in assessing the weight it should be accorded. *Ferrier v. State* (1987), Ind., 514 N.E.2d 285, 288. The psychologist stated that he did consider the defendant's assault conviction, although he discounted its importance in his decision-making. The defendant's answers indicate that he may have provided the psychologist with an incomplete history of his violent acts, which indicated behavioral deficiencies. In essence, the State's principal purpose was to attack the reliability of the psychologist's opinion, not to impeach the defendant by improper means. The questioning and rebuttal evidence therefore do not constitute improper impeachment.

The defendant has failed to demonstrate error on this issue.

### 3. Lesser Included Offense Instructions

The defendant claims that the trial court erred in refusing his tendered lesser included offense instructions on reckless homicide and involuntary manslaughter because there was evidence from which the jury could find that he committed these crimes. In support of his contention, he points to evidence that he was upset and angry, that he was merely punching the victim with the pistol when it went off, that the pistol had misfired once before, and that most of the eyewitnesses did not see him take "deliberate aim and pull the trigger." The jury was instructed on the offenses of murder and voluntary manslaughter.

In reviewing the refusal of a tendered instruction, we must determine: 1) whether the tendered instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions that are given. *Williams v. State* (1980), 273 Ind. 105, 402 N.E.2d 954; *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836.

The test for determining whether an instruction on a lesser included offense should be given involves two components. One addresses whether the claimed lesser offense is either inherently or factually included in the language of the statute and the document charging the greater offense. *Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1372. The second component involves examining the evidence to determine whether the evidence warrants an instruction on the lesser offense. An instruction on the lesser offense is warranted where a serious evidentiary dispute exists respecting the element that distinguishes

---

**2.** In our analysis we have assumed that the psychologist's testimony was relevant. Where the defendant injects an irrelevant matter into the trial, he cannot complain about the admission of *extrinsic* evidence that responds to his irrelevant evidence. Miller, *Indiana Evidence,*

§ 401.116 (1984) and cases cited in footnote 1. Thus, if the psychologist's testimony was irrelevant, the defendant could not premise error on the admission of the facts of the assault in the State's rebuttal.

the greater offense from the lesser one. *Id.*

Because of the second component of the test, we find that the evidence does not support the giving of an instruction on either of the claimed lesser included offenses.

■ Reckless homicide is a killing committed with a plain, conscious, and justifiable disregard of harm that might result, and the disregard involves a substantial deviation from acceptable standards of conduct. Ind.Code § 35–42–1–5, *in conjunction with* Ind.Code § 35–41–2–2(c). Murder, on the other hand, requires as a minimum a killing committed by a perpetrator who engaged in the killing with an awareness of a high probability that he was doing so. Ind.Code § 35–42–1–1, *in conjunction with* Ind.Code § 35–41–2–2(b). In fact, the State in the present case charged the defendant with only a knowing killing, not an intentional one. Thus, an instruction on reckless homicide was warranted only if there was a serious evidentiary dispute as to whether the defendant shot the victim recklessly but not knowingly.

■ After the fight had ended, the defendant raced upstairs and found his pistol. As he came down the stairs, Richardson was walking toward the front exit. The defendant pulled the trigger, but the pistol misfired. He then followed Richardson outside and fired the pistol over Richardson's head. When Richardson reached his car, the defendant struck him in the back of the head with the pistol. Offering no resistance, Richardson got in his car. The defendant punched the pistol into Richardson's face, leaving the barrel's indentation on Richardson's cheek. Several witnesses stated that the defendant cursed at Richardson, hesitated, and then placed the pistol barrel against Richardson's head immediately before the fatal shot was fired. The bullet wound was a contact wound, indicating that the barrel was flush against the victim's head, not just close to it. During the attack, the defendant threatened to kill Richardson at least three times. It was undisputed that Richardson did not resist the defendant's attacks.

We conclude that this evidence precludes any reasonable possibility that the defendant's conduct involved unjustifiable disregard of possible harm as opposed to an awareness of a high probability that he was shooting the victim. *See Ingram v. State* (1989), Ind., 547 N.E.2d 823, 830–31. The instruction on reckless homicide was properly refused.

■ The crime of involuntary manslaughter contemplates an incidental killing that occurs during the commission or attempted commission of one of the crimes enumerated in Ind.Code § 35–42–1–4, including battery. *Whipple*, 523 N.E.2d at 1372. The defendant's threats to kill Richardson, the continuing nature of his attack, his firing of the gun just before the fatal shooting, and the physical and testimonial evidence that the gun barrel was placed against Richardson's head convincingly demonstrate that the defendant knowingly killed when the fatal shot was fired. *See Ingram*, 547 N.E.2d at 831. Because no serious evidentiary dispute was presented, the trial court did not err in refusing the defendant's tendered instruction on involuntary manslaughter.

■ We also note that the instructions were not accompanied by an explanation of the role of lesser included offenses, a separate basis for refusing them. *Simpson v. State* (1987), Ind., 506 N.E.2d 473, 476.

*4. Refusal of Self–Defense Instructions*

The defendant asserts that the trial court erred in refusing two of his instructions on self-defense. He claims that each tendered instruction is a correct statement of law supported by probative evidence and was not covered by other instructions.

The defendant tendered an instruction stating:

> One who is confronted on his own property with a crime is entitled to great latitude in protection of his right and property.

Record at 162. The trial court rejected this instruction and instead modified another

tendered by the defendant. The modified instruction was read to the jury:

Also, at the time this charge was filed there was in full force and effect a statute in Indiana entitled Use of Force to Protect Person or Property, Qualified Immunity from Legal Jeopardy[,] the pertinent parts of which read as follows: A person is justified in using reasonable force against another person to protect himself from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that such force is necessary to prevent serious bodily injury to himself or the commission of a forcible felony. No person in the State shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary. Not withstanding (sic) what I just read, a person is not justified in using force if he is committing or escaping after the commission of a crime, if he provokes unlawful action by another person with intent to cause bodily injury to the other person or he has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

Record at 745–46. In giving this instruction, the trial court did not paraphrase Ind. Code § 35–41–3–2(b), which addresses the use of force to protect one's "dwelling or curtilage." The defendant claims that his tendered instruction was necessary to inform the jury that he was entitled to great latitude in protecting himself and his *home.*

▇▇▇▇ The trial court's instruction substantially covers the subject of the justified use of force to protect oneself and one's property. Also, the defendant's tendered instruction does not mention the protection of one's "home," and the protection of property was not truly involved in this case. The trial court did not err in refusing to give the defendant's tendered instruction.

The defendant also tendered an instruction that stated:

Defendant, in prosecution for homicide, may prove specific acts of violence committed by deceased upon third parties of which the defendant has knowledge, by the homicide, to show defendant's state of apprehension, there being some evidence of self defense.

Record at 163. This language appears in similar form in *McKee v. State* (1926), 198 Ind. 590, 598, 154 N.E. 372, 375, wherein this Court held that such evidence is admissible. *McKee* and other cases cited by the defendant do not involve use of this rule of admissibility as an instruction.

▇▇▇▇ An instruction serves to inform the jury of the law applicable to the facts without misleading it and to enable it to understand the case and arrive at a just, fair and correct verdict. *Fox v. State* (1986), Ind., 497 N.E.2d 221, 225. A jury must be instructed on matters that are necessary for its information in arriving at its verdict. *Id.; Rogers v. State* (1979), 272 Ind. 65, 74, 396 N.E.2d 348, 354. An instruction that is apt to mislead or confuse the jury should be refused. *Fox,* 497 N.E.2d at 225; *Eddy v. State* (1986), Ind., 496 N.E.2d 24. Generally, an instruction should not single out the testimony of a specific witness, but should instead apply equally to all witnesses. *Blackburn v. State* (1979), 271 Ind. 139, 142, 390 N.E.2d 653, 655.

▇▇▇▇ The defendant's tendered instruction is not a proper instruction for at least two reasons. The instruction needlessly singles out and emphasizes the testimony of one defense witness. This is unlike the situation where an instruction may be helpful in eliminating possible confusion of the jury, such as instructions on expert testimony, *Lynn v. State* (1979), 271 Ind. 297, 392 N.E.2d 449, a defendant's confession, *Tanner v. State* (1984), Ind., 471 N.E.2d 665, and deposition testimony, *Ingram,* 547 N.E.2d at 829. Secondly, the phrase "there being some evidence of self defense" could mislead the jury and invade its function by directing it that there *was* qualifying evidence of self-defense. The

jury was entitled to find that self-defense was not presented by the facts of this case.

The trial court properly refused the defendant's instructions on self-defense.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

PIVARNIK, J., not participating.