[Cite as *Beary v. Larry Murphy Dump Truck Serv., Inc.*, 2011-Ohio-4977.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| JOSEPH BEARY | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00048 |
| LARRY MURPHY DUMP TRUCK | : |  |
| SERVICE, INC. ET AL | : |  |
|  | : | O P I N I O N |
| Defendant-Appellee |  |  |

CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of
                            Common Pleas, Case No. 2010-CV-01412

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     September 26, 2011

APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

DANIEL M. SUCHER                       KENNETH A. CALDERONE
Young & Sucher PLL                     Hanna, Campbell & Powell, LLP
1001 Jaycox Road                       3737 Embassy Parkway
Avon, OH 44011                         Akron, OH  44334

*Gwin, P.J.*

{¶1} Plaintiff-appellant Joseph Beary appeals a summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of defendants-appellees Larry Murphy Dump Truck Service, Inc. and Road Aggregates, Inc. Appellant assigns two errors to the trial court:

{¶2} "I. THE TRIAL COURT ERRED BY GRANTING DEFENDANT MURPHY TRUCK SUMMARY JUDGMENT WHERE ISSUES OF FACT EXIST REGARDING THE EMPLOYER'S LIABILITY FOR AN INTENTIONAL TORT.

{¶3} "II. THE TRIAL COURT ERRED IN GRANTING ROAD AGGREGATE'S MOTION FOR SUMMARY JUDGMENT WHERE AN ISSUE OF FACT EXISTS AS TO ITS NEGLIGENCE RELATE TO APPELLANT'S INJURY."

{¶4} The record indicates in October of 2009, appellee Larry Murphy Dump Truck Services, Inc. (hereinafter LMDT) had a contract to repave a parking lot at the Giant Eagle Grocery in Louisville, Stark County, Ohio. The first day of the project involved blocking off, prepping, and paving one-half of the parking lot. The second day of the project involved moving barricades, prepping, and paving the remaining half of the parking lot. On the second day, foreman Ron Blackburn gave his crew members their job assignments. Blackburn was employed by Road Aggregates. Matt Hoopes was told to use a skid steer to clean dirt and debris from the remaining section of the parking lot before it was repaved. The skid steer, often called a "Bobcat" had a mechanical broom device to sweep dirt and debris from the area. The skid steer was owned by LMDT. Hoopes and appellant were employed by LMDT. Larry Murphy owned both LMDT and Road Aggregates.

**{¶5}**  Appellant and another worker were assigned to stretch caution tape around the remaining parking lot section as a barricade to keep motorists from driving into the area where they would be paving.  As appellant was tying caution tape to an overturned shopping cart, he was struck from behind by the skid steer, sustaining serious injuries. At the time of the accident the skid steer was in reverse and the operator did not know appellant was behind him. Appellant did not know the skid steer was headed in his direction because he had his back turned to the machine. The skid steer did not have a backup alarm that would have warned appellant the machine was approaching him.

**{¶6}**  Appellant brought suit against his employer, LMDT, for an intentional tort pursuant to R.C. Section 2745.01, and against Blackburn's employer, Road Aggregate, Inc. for negligence. Both LDMT and Road Aggregate, Inc. are owned by the same person, Larry Murphy.

**{¶7}**  Civ. R. 56 states in pertinent part:

**{¶8}**  "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶9} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, *Houndshell v. American States Insurance Company* (1981), 67 Ohio St. 2d 427. The court may not resolve ambiguities in the evidence presented, *Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App. 3d 301.

{¶10} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St. 3d 35. This means we review the matter de novo, *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000-Ohio-186.

{¶11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim, *Drescher v. Burt* (1996), 75 Ohio St. 3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but

instead must submit some evidentiary material showing a genuine dispute over material facts, *Henkle v. Henkle* (1991), 75 Ohio App. 3d 732.

I.

{¶12} Appellant's first assignment of error addresses the employer intentional tort claim against LMDT.

{¶13} The record contains evidence the backup alarm on the skid steer had not been working for some time. In his deposition, Blackburn testified he examined the alarm after the accident and found the wires powering the device were corroded to the extent the wires had actually broken. Another witness stated the wires appeared to have been intentionally disconnected.

{¶14} Appellant also argues that neither Road Aggregate nor LMDT had placed a spotter to warn the skid steer operator and surrounding persons of dangerous situations.

{¶15} The trial court cited R.C. 2745.01, which provides an employer cannot be held liable unless the plaintiff proves the employer committed a tortious act with intent to injure another or with the belief the injury was substantially certain to occur. The statute defines substantially certain to mean that an employer acts with deliberate intent to cause an employee to suffer an injury, disease, condition, or death. The statute also states: "(C) deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or occupational disease or condition occurs as a direct result."

{¶16} The trial court found the backup alarm could be considered a safety-related devise, but it was not a safety guard. The court noted the statute does not define the term equipment safety guard, but the Ohio Industrial Commission does. The Industrial Commission regulations define guard as "a covering, fencing, railing, or enclosure which shields an object from accidental contact." The court concluded a backup alarm is not designed to guard anything. The court also found there was no evidence of deliberate removal of the wires.

{¶17} In the recent case of *Fickle v. Conversion Technologies International, Inc.* Williams App. No. WM-10-016, 2011-Ohio-2960, the Sixth District Court of Appeals reviewed a case where an employee suffered injuries to her hand and arm while operating an adhesive coating machine used in fabrication of laminated roofing material. The machine in question was equipped with a switch permitting the operator to either operate the machine continuously or in jog position. In jog mode the machine only runs so long as the operator depresses the jog button and stops when the operator's finger comes off the button. Fickle argued she had never performed or been trained in the job she was performing, and specifically, on the use of the jog switch. At the time of her accident she was operating the machine on continuous run.

{¶18} The station was equipped with an emergency stop cable, which had been disconnected on the previous job because of problems with the size of the material being run, but the cable should have been reconnected for the material Fickle was running when she was injured. It was not common practice to leave the cable disconnected.

{¶19} The Sixth District found it was required to construe the terms "equipment safety guard" and "deliberate removal", and found it was a question of law for the court. The appeals court noted the General Assembly has not provided a definition of "equipment safety guard" or "deliberate removal", and in the absence of clear legislative intent to the contrary, words and phrases in a statute must be construed according to their plain and ordinary meanings. *Fickle,* at paragraph 29, citing *Kunkler v. Goodyear Tire & Rubber Company* (1988), 36 Ohio St. 3d 135, 137, 552 N.E. 2d 477.

{¶20} The court found there was no indication the General Assembly intended to incorporate any equipment-specific or industry-specific definitions from the Administrative Code or OSHA regulations. The court found we should refrain from adding words to unambiguous statutes under the guise of interpretation. *Fickle* at paragraph 42, citations deleted. The court found the plain, ordinary, and generally accepted meaning of an undefined statutory term is ascertained by examining dictionary definitions. Id. at paragraph 29, citations deleted.

{¶21} The Sixth District Court of Appeals concluded that for purposes of R.C. 2745.01 (C), an equipment safety guard is commonly understood to mean a device designed to shield the operator of the equipment from exposure to or injury by a dangerous aspect of the equipment.

{¶22} We find the *Fickle* court's reasoning persuasive. We conclude the backup alarm is not an equipment safety guard pursuant to R. C. 2745.01 (C). We find the trial court did not err in finding LMDT was entitled to summary judgment as a matter of law.

{¶23} The first assignment of error is overruled.

II.

{¶24} In his second assignment of error, appellant argues the trial court erred in granting summary judgment in favor of Road Aggregates on his cause of action for negligence.

{¶25} The trial court did not address any of the issues pertaining to Road Aggregates, but entered summary judgment in its favor. Because we review the record de novo, we will address this assignment of error.

{¶26} Appellant states it is undisputed that a Road Aggregates employee directed the repaving activities on the day appellant was injured, and so the analysis regarding an employer intentional tort standard does not apply to Road Aggregates. He argues Road Aggregate is liable because of Blackburn's negligence in performing his work duties in the course of his employment with Road Aggregates.

{¶27} In its motion for summary judgment, Road Aggregates argued Blackburn was its employee, but also a loaned servant to LMDT on the day in question. Road Aggregates asserted it does not engage in any type of paving work or business, was not a party to the contract for Giant Eagle job, and had no control over or involvement in the job site or equipment, or over appellant and the other employees of LMDT at the site. Road Aggregates argued Blackburn, as a loaned servant, worked under LMDT's direction and control, and although Blackburn was paid by Road Aggregates, LMDT reimbursed Road Aggregates for all the wages and expenses associated with the Giant Eagle job.

{¶28} Under the loaned servant doctrine, when one party lends his employee to another for a specific employment, the employee is treated as the employee of the party

to whom he is loaned for anything done during the loan period. *Dirksing v. Blue Chip Architectural Products, Inc.* (1994), 100 Ohio App. 3d 213, 224. Where the claim of liability is predicated on the actions of the loaned servant, the questions is whether the loaned servant is acting in the business of and under the direction of the general employer or that of the temporary employer. *Medina v. Harold J. Becker Company, Inc.* 163 Ohio App. 3d 832, 2005-Ohio-5438, at paragraph 57. The issue is which employer directs and controls the employee's actions. *Ferguson v. Dyer,* 149 Ohio App. 3d 380, 2002-Ohio- 1442, at paragraph 15.

**{¶29}** In his deposition, Blackburn was questioned extensively about his employment status. He testified he had worked for LMDT for several years before the owner, Larry Murphy, formed the Road Aggregates Company. Blackburn testified if asked where he worked, he would respond Murphy Trucking, and he believed his classification had evolved into foreman. Blackburn testified he was solely in control of the job site, but reported to his next in charge, Gary Provance, now deceased. Provance worked for Road Aggregates, and was in turn answerable to Larry Murphy, the owner and ultimate boss of both LMDT and Road Aggregates.

**{¶30}** Murphy testified in his deposition Provance was the operations manager and organized jobs. He testified Provance, "wore many hats" and ran the day-to-day operations. Provance drafted LMDT's safety manual, attended LMDT's safety meetings, and shared responsibility as its safety officer. He was paid by Road Aggregates, but Road Aggregates was reimbursed by LMDT for all Provance's wages, taxes, Workers' Compensation premiums, and all other expenses associated with the work he did for LMDT.

**{¶31}** The record indicates Blackburn had been loaned to LMDT for several years. The duration of time a servant is loaned is not necessarily dispositive. In the *Harold J. Becker* case, supra, the borrowed servant relationship spanned several years. Blackburn testified he considered himself LDMT's employee and its foreman on the job site where appellant was injured.

**{¶32}** We find reasonable minds could not differ on the question of whether Blackburn was a loaned servant on the day appellant was injured. We find he was loaned to LMDT by Road Aggregates, and as such, is entitled to the same immunity for negligence as employees of LMDT. We find any negligence of Blackburn is not ascribable in respondeat superior to Road Aggregates. We conclude the trial court did not err in granting summary judgment in favor of Road Aggregates.

**{¶33}** The second assignment of error is overruled.

**{¶34}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

WSG:clw 0901

[Cite as *Beary v. Larry Murphy Dump Truck Serv., Inc.*, 2011-Ohio-4977.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEPH BEARY | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LARRY MURPHY DUMP | | |
| TRUCK SERVICE, INC. ET AL | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 2011-CA-00048 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER